## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| CARBON ACTIVATED TIANJIN CO., LTD., CARBON ACTIVATED CORPORATION, DATONG JUQIANG ACTIVATED CARBON CO., LTD., SHANXI INDUSTRY TECHNOLOGY TRADING CO., LTD., DATONG MUNICIPAL YUNGUANG ACTIVATED CARBON CO., LTD. and BEIJING PACIFIC ACTIVATED CARBON PRODUCTS CO., LTD., | |
| Plaintiffs, | Court No. 21-00131 |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| CALGON CARBON CORPORATION and CABOT NORIT AMERICAS, INC., | |
| Defendant-Intervenors. | |

**DEFENDANT-INTERVENORS' COMMENTS
IN SUPPORT OF REMAND REDETERMINATION**

                                             JOHN M. HERRMANN
                                             R. ALAN LUBERDA
                                             MELISSA M. BREWER
                                             JULIA A. KUELZOW

                                             **Counsel to Defendant-Intervenors**

**March 1, 2023**

Table of Contents

Page

I. THE DEPARTMENT'S SURROGATE VALUE SELECTION FOR CARBONIZED MATERIALS IS SUPPORTED BY SUBSTANTIAL EVIDENCE..........................................................................................................1

II. THE DEPARTMENT'S RELIANCE ON BRAVO GREEN'S FINANCIAL STATEMENTS IS SUPPORTED BY SUBSTANTIAL EVIDENCE..........................................................................................................7

III. CONCLUSION................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Carbon Activated Tianjin Co. v. United States,
   586 F. Supp. 3d 1360 (Ct. Int'l Trade 2022) ("Remand Opinion")................................ *passim*

Downhole Pipe & Equip., L.P. v. United States,
   776 F.3d 1369 (Fed. Cir. 2015)................................................................................... 11-12

Jacobi Carbons AB v. United States,
   619 Fed. Appx. 992 (Fed. Cir. 2015)....................................................................................8

Juancheng Kangtai Chem. Co. v. United States,
   Slip Op. 15-93, 2015 Ct. Intl. Trade LEXIS 94 (Aug 21, 2015) ..............................................5

NMB Singapore Ltd. v. United States,
   557 F.3d 1316 (Fed. Cir. 2009)..............................................................................................3

**Administrative Determinations**

Certain Activated Carbon from the People's Republic of China:
   Final Results and Partial Rescission of Third Antidumping Duty
   Administrative Review, 76 Fed. Reg. 67,142
   (Dep't Commerce Oct. 31, 2011), and accompanying Issues and Decision
   Memorandum, aff'd, Albemarle Corp. v. United States, 27 F. Supp. 3d 1336
   (Ct. Int'l Trade 2014), aff'd in part, rev'd in part on other grounds,
   821 F.3d 1345 (Fed. Cir. 2016) .......................................................................................4

Certain Activated Carbon from the People's Republic of China:
   Final Results of Antidumping Duty Administrative Review; 2011-2012,
   78 Fed. Reg. 70,533 (Dep't Commerce Nov. 26, 2013)............................................................4

Certain Activated Carbon From the People's Republic of China:
   Final Results of Antidumping Duty Administrative Review; 2014–2015,
   81 Fed. Reg. 62,088 (Dep't Commerce Sept. 8, 2016), and accompanying
   Issues and Decision Memorandum ........................................................................ 6-7

Certain Activated Carbon From the People's Republic of China:
   Final Results of Antidumping Duty Administrative Review; 2015–2016,
   82 Fed. Reg. 51,607 (Dep't Commerce Nov. 7, 2017), and accompanying
   Issues and Decision Memorandum ........................................................................ 6-7

Certain Activated Carbon From the People's Republic of China:
  Final Results of Antidumping Duty Administrative Review; 2016–2017,
  83 Fed. Reg. 53,214 (Dep't Commerce Oct. 22, 2018), and accompanying
  Issues and Decision Memorandum .................................................................................. 6-7

Certain Activated Carbon From China,
  USITC Pub. 4797 (June 2018) ............................................................................................. 5-7

Certain Steel Nails from the People's Republic of China:
  Final Determination of Sales at Less Than Fair Value and Partial Affirmative
  Determination of Critical Circumstances, 73 Fed. Reg. 33,977
  (Dep't Commerce June 16, 2008), and accompanying IDM ..................................................9

Final Results of Redetermination Pursuant to Court Remand;
  *Hebei Foreign Trade and Advertising Corp v. United States*,
  Consol. Ct. No. 09-00524 (Dep't Commerce July 26, 2011), *available at*
  https://access.trade.gov/resources/remands/11-21.pdf, aff'd,
  Hebei Foreign Trade and Advertising Corp. v. United States,
  807 F. Supp. 2d 1317 (Ct. Int'l Trade 2011) ........................................................................ 4-5

Issues and Decision Memorandum for the Final Results of the Sixth Antidumping
  Duty Administrative Review (Dep't Commerce Nov. 18, 2014), ref'd in,
  79 Fed. Reg. 70,163 (Dep't Commerce Nov. 25, 2014) (final results) .....................................5

Results of Redetermination Pursuant to Court Remand;
  *Carbon Activated Tianjin Co., Ltd., et al. v. United States*,
  Consol. Court No. 21-00131 (Dep't Commerce Nov. 17, 2022) (ECF No. 50)
  ("Remand Results") (Remand PR 9) ................................................................................. *passim*

**DEFENDANT-INTERVENORS' COMMENTS**
**IN SUPPORT OF REMAND REDETERMINATION**

On behalf of Calgon Carbon Corporation and Cabot Norit Americas, Inc. (collectively, "Defendant-Intervenors"), we submit the following comments in support of the remand redetermination issued by the U.S. Department of Commerce ("the Department") and in response to the comments in opposition submitted on behalf of Plaintiffs. See Results of Redetermination Pursuant to Court Remand; *Carbon Activated Tianjin Co., Ltd., et al. v. United States*, Consol. Court No. 21-00131 (Dep't Commerce Nov. 17, 2022) (ECF No. 50) ("Remand Results") (Remand PR 9)[1]; Plaintiffs' Comments in Opposition to Remand Redetermination (Jan. 9, 2023) (ECF No. 54) ("Pls' Comments"). The Department's remand findings were issued pursuant to the U.S. Court of International Trade's ("Court") opinion and order in Carbon Activated Tianjin Co. v. United States, 586 F. Supp. 3d 1360 (Ct. Int'l Trade 2022) ("Remand Opinion"). For the reasons provided below, the Court should sustain the Department's Remand Results in their entirety.

**I.   THE DEPARTMENT'S SURROGATE VALUE SELECTION FOR CARBONIZED MATERIALS IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiffs oppose the Department's reliance on the Malaysian import value for merchandise classified under Harmonized Tariff Schedule ("HTS") subheading 4402.90.1000 ("coconut shell charcoal"), rather than the Malaysian value for merchandise classified under

---

[1] Documents in the administrative record are cited by their confidential and/or public record number (i.e., "(CR __)" and "(PR __)") or the remand administrative record (i.e., "(Remand PR __)") provided in the Index to the Administrative Record and Index to the Remand Record filed with the Court on May 26, 2021 (ECF No. 32) and December 1, 2022 (ECF No. 51), respectively.

HTS subheading 4402.90 ("Wood Charcoal (Including Shell or Nut Charcoal), Excluding That of Bamboo"), to value reported consumption of carbonized materials.  See Pls' Comments at 1-5.

As an initial matter, the Department acknowledges that the record does not demonstrate one way or another whether the mandatory respondents purchased or used wood charcoal or coconut charcoal to produce activated carbon that was sold in the United States.  Remand Results at 4-5, 14; see also Remand Opinion, 586 F. Supp. 3d at 1378.  Accordingly, and as the Remand Opinion recognized, the Department must decide between two imperfect datasets, neither of which clearly reflects the input used by Plaintiffs.  Remand Opinion, 586 F. Supp. 3d at 1379 (citation omitted).  The Department's continued reliance on the value of merchandise classified under HTS subheading 4402.90.1000 is supported by substantial evidence.

Plaintiffs discount the relevance of the Department's findings in prior reviews, claiming that the records were different because use of a wood-based charcoal surrogate value was not an option.  See Pls' Comments at 3.  It is quite relevant, however, that in past reviews the Department found that "coconut-shell carbmat shares many similarities with coal-based carbmat and is an appropriate surrogate for coal-based carbmat" including the properties of "porosity and adsorption, {which} are essential in the production of activated carbon."  Remand Results at 5 and n.26 (language in French brackets added).[2]  To support this finding, the Remand Results (in

---

[2]   Plaintiffs criticize the Department's statement that "{t}here is a long, demonstrable history in this proceeding of using coconut-shell carbmat in the production of the subject merchandise, unlike wood carbmat, which has never been used to produce the subject merchandise" as conflating the surrogate value used with the input being valued.  See Pls' Comments at 2-3 (quoting Remand Results at 5).  It is evident from the analysis immediately following this statement that the Department, indeed, is focused on whether coconut-shell-based or wood-based charcoal constitutes the best surrogate value for coal-based carbonized materials, making the path of the agency's decision-making reasonably discernable.  NMB Singapore Ltd. v. United States, 557 F.3d 1316, 1319 (Fed. Cir. 2009).

footnotes 23-25) cite to the Department's decisions in prior administrative reviews, including the following:

- *Third review*: "In the Department's recent Carbon Remand, the Department stated that coconut shell charcoal shares similar properties with carbonized material and that those similar properties are essential in the production of activated carbon. . . . Therefore, because Indian HTS number 4402.90.10 'Coconut Shell Charcoal' results in a better, input-specific price for coal-based carbonized materials, is contemporaneous and tax/duty exclusive, the Department will use Indian HTS number 4402.90.10 'Coconut Shell Charcoal' to calculate the SV for CCT and Jacobi's carbonized material input." Certain Activated Carbon from the People's Republic of China: Final Results and Partial Rescission of Third Antidumping Duty Administrative Review, 76 Fed. Reg. 67,142 (Dep't Commerce Oct. 31, 2011), and accompanying Issues and Decision Memorandum at Comment 4.b. (cited in Remand Results at 5 nn.23-24), aff'd, Albemarle Corp. v. United States, 27 F. Supp. 3d 1336, 1351 (Ct. Int'l Trade 2014) (affirming the Department's continued reliance on this surrogate value in a remand redetermination) (cited in Remand Results at 5 n.25), aff'd in part, rev'd in part on other grounds, 821 F.3d 1345 (Fed. Cir. 2016).

- *Fifth review*: "In past decisions and on remand, because SV information specific to coal-based carbonized materials was not available, the Department has found coconut shell charcoal is the best available information with which to value respondents' coal-based carbonized materials, based on the product specifications." Certain Activated Carbon from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2011-2012, 78 Fed. Reg. 70,533 (Dep't Commerce Nov. 26, 2013), and accompanying Issues and Decision Memorandum at 36, Comment 6 (citations omitted) (cited in Remand Results at 5 n. 23-24).

- *First review remand findings*: "Despite our initial concerns regarding the valuation of carbonized material, our re-examination of the record indicates that coconut shell charcoal shares similar properties with carbonized material and that those similar properties are essential in the production of activated carbon. The expert's report found that coal-based carbonized materials used by Cherishmet and coconut shell charcoal are similar in porosity and adsorption, which are both properties essential in the production of activated carbon." Final Results of Redetermination Pursuant to Court Remand; *Hebei Foreign Trade and Advertising Corp v. United States*, Consol. Ct. No. 09-00524 (Dep't Commerce July 26, 2011) at 10, *available at* https://access.trade.gov/resources/remands/11-21.pdf,

aff'd, Hebei Foreign Trade and Advertising Corp. v. United States, 807 F. Supp. 2d 1317, 1319 n.2 (Ct. Int'l Trade 2011) (cited in Remand Results at 5 n.25).

Although "{e}ach administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record," Remand Opinion, 586 F. Supp. 3d at 1379 (citing e.g., Qingdao Sea-Line Trading Co. v. United States, 766 F.3d 1378, 1387 (Fed. Cir. 2014)), the Department may rely on general knowledge it gains in a prior segment of a proceeding to inform its analysis in a subsequent segment. See, e.g., Juancheng Kangtai Chem. Co. v. United States, Slip Op. 15-93 at 40 n.29, 2015 Ct. Intl. Trade LEXIS 94 at *62 n.29 (Aug 21, 2015) ("Final findings in prior reviews become the law of the case and 'agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently.'") (quoting Dongbu Steel Co. v. United States, 635 F.3d 1363, 1371 (Fed. Cir. 2011)). The above-referenced findings reflect broader findings reached previously by the Department regarding the similarities between two types of materials – coconut-shell-based carbonized materials and coal-based carbonized materials – over the course of this antidumping duty order. Remand Results at 5-6; see also Issues and Decision Memorandum for the Final Results of the Sixth Antidumping Duty Administrative Review, at 60 (Dep't Commerce Nov. 18, 2014) ("Cherishmet correctly states that the Department has found that coal-based carbonized materials and coconut shell carbonized materials share similar properties.") (citations omitted), ref'd in, 79 Fed. Reg. 70,163 (Nov. 25, 2014) (final results).

The Department also did not disregard Plaintiffs' arguments regarding the contents of the U.S. International Trade Commission ("ITC") report. See Pls' Comments at 3-4. In fact, the Department acknowledged that the ITC report "lends some support to {respondents'} claims," but it found that "the ITC Report also states that the physical properties of activated carbon (size

4

and shape of particles, surface area, pore-size distribution, ash content, and hardness) 'depend on the raw materials used, *as well as the activation process*.'" Remand Results at 6 (citing ITC report at PDF p.125) (emphasis to ITC report added in Remand Results). The Department explained that the ITC report states that *chemically* activated carbon is generally made using wood, whereas in this segment both respondents reported producing only *steam* activated carbon. Remand Results at 6 (citing to "DJAC Section D Questionnaire Response," dated September 19, 2019, at DJAC Section D Response at 6 (CR 60-61; PR 102); "Carbon Activated Response to Section D of Questionnaire (Part I)," dated September 19, 2019, at Attachments A (6) and B (6)). The Department's analysis continued on to state that "because chemically activated carbon is generally made using wood, and the respondents reported only using steam activation during the POR, we find Malaysian HS 4402.90, which includes wood-based activated carbon, is not the best information to value the respondents' carbmat."[3] Id. at 7.

The ITC report is consistent with Chinese respondents' (including DJAC's) long-standing position that coconut-shell charcoal is the better surrogate value, because wood is a much softer material[4] with a significantly different physical structure that it is almost never steam activated

---

[3] Plaintiffs adopt an unnecessarily narrow reading of the Department's finding in alleging that this statement "erroneously conflates wood-charcoal in HTS 4402.90 with chemically produced wood-based activated carbon, contradicting its AR4 findings" and that as a factual matter "wood-charcoal can be steam-activated to produce subject merchandise." Pls' Comments at 5. The Department did not find unequivocally that wood-charcoal can never be steam-activated. Rather, it explained that "because chemically activated carbon is **generally** made using wood," whereas respondents reported using steam activation during this review period, that is one more piece of evidence on the record that supports the use of coconut-shell charcoal as a better surrogate value. See Remand Results at 7 (emphasis added).

[4] See, e.g., Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2016–2017, 83 Fed. Reg. 53,214 (Dep't Commerce Oct. 22, 2018), and accompanying Issues and Decision Memorandum for AR10, at 11 (Comment 3); Certain Activated Carbon From the People's Republic of China: Final Results of

(cont'd on next page)

(and instead is generally chemically activated).[5] The fact that wood, unlike both coal-based and coconut-shell based inputs, usually requires a different activation process reinforces the Department's consistent findings that coal-based and coconut-shell-based carbonized materials are significantly more similar than wood-based charcoal. In other words, although past findings repeatedly showed similarities between coconut-based and coal-based inputs, nothing here supports finding a link between coal-based and wood-based charcoals. See Remand Results at 7-8, 14.

As to Plaintiffs' claim that Chinese pricing data support the Department's selection of the value of merchandise classified under HTS subheading 4402.90 (Pls' Comments at 4), the Department found those data unpersuasive because they are "from a non-market economy (NME) company which supplies various sizes, chemical impregnations, and degrees of hardness of coal, coconut-shell, and wood-based activated carbons." Remand Results at 15. Moreover, despite Plaintiffs' general position that NME prices "are instructive to show that both lower-priced wood-charcoal and higher-priced coconut-charcoal prices must be included to obtain a

---

Antidumping Duty Administrative Review; 2015–2016, 82 Fed. Reg. 51,607 (Dep't Commerce Nov. 7, 2017), and accompanying Issues and Decision Memorandum for AR9, at 22 (Comment 5); Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2014–2015, 81 Fed. Reg. 62,088 (Dep't Commerce Sept. 8, 2016), and accompanying Issues and Decision Memorandum for AR8, at 28-29 (Comment 5) (summarizing DJAC's arguments against the use of a wood-based charcoal surrogate value because "imports under this heading are predominantly comprised of non-scope goods that are different than carbonized materials in terms of physical characteristics and end-uses").

[5]   See also DJAC Mar. 30, 2020 Surrogate Value Submission at Exhibit 5A (PR 197-226); Certain Activated Carbon From China, USITC Pub. 4797 (Second Review) (June 2018) at I-11 n.33 ("Because chemically activated carbon is generally made using wood, it has lower hardness than certain activated carbon made from coal. Chemically activated carbons are generally powdered or pelletized due to their lower hardness.").

reliable and representative coal-carbmat SV" (Pls' Comments at 4), the Department explained that "{i}t is unclear how this information supports the use of a wood-based charcoal SV without further evidence or explanation." Remand Results at 15.

Plaintiffs are also wrong that the U.S. Court of Appeals for the Federal Circuit's ("Federal Circuit") decision in Jacobi Carbons AB v. United States, 619 Fed. Appx. 992, 999 (Fed. Cir. 2015) (non-precedential), an appeal of the fourth administrative review, contradicts the Remand Results. See Pls' Comments at 4. In that non-precedential decision, the Federal Circuit fund "there is no evidence on this record comparing wood charcoal and coconut charcoal" and "no findings {or} record evidence that coconut shell charcoal is a better surrogate for coal-based carbonized material than wood charcoal." Jacobi Carbons, 619 Fed. Appx. at 999. However, since the fourth administrative review, and as discussed above, the Department has made numerous findings that there are similarities between coconut shell-based carbonized materials and coal-based carbonized materials, whereas it has made no such findings of similarities between coal-based carbonized materials and wood-based carbonized materials. Thus, the Federal Circuit's decision in Jacobi Carbons does not compel reliance on the value for merchandise classified under HTS subheading 4402.90 in this segment.

## II. THE DEPARTMENT'S RELIANCE ON BRAVO GREEN'S FINANCIAL STATEMENTS IS SUPPORTED BY SUBSTANTIAL EVIDENCE

The Court instructed the Department on remand to "fairly weigh the available options and explain its decision in light of its selection criteria, addressing any shortcomings," and the Department has done so in the Remand Results. Remand Opinion, 586 F. Supp. 3d at 1381. Specifically, the Department conducted an extensive analysis that weighs the relative pros and cons of the financial statements of Bravo Green, Joint Stock Company Sorbent ("JSC") and

7

Romcarbon S.A. ("Romcarbon").  See Remand Results at 9-12, 18-28.  Plaintiffs challenge the Department's continued reliance on the 2018 financial statements of Bravo Green, a Malaysian producer of activated carbon, to value respondents' financial ratios.  See Pls' Comments at 5-14.

Plaintiffs argue that the Department unlawfully rejected the statements of JSC (when finding it was unable to determine what proportion of the company's production activity is related to activated carbon) and Romcarbon (when finding that activated carbon production represents a small portion of the company's activities and sales).  See Pls' Comments at 7. Contrary to these claims, the Department's analysis is reasonable and supports the selection of the Bravo Green statements.  The Department explained its longstanding view that it is "important to consider whether the potential surrogate companies have financial statements that are specific to the production of merchandise that is identical or comparable to subject merchandise."  Remand Results at 22.  Moreover, the representativeness of the production experience of a potential surrogate producer in relation to the NME producer is an important consideration.  See id. at 25 (citing Seah Steel Vina Corp. v. United States, 269 F. Supp. 3d 1335, 1348 (Ct. Int'l Trade 2017)).

Here, the Department explained that "100 percent of Bravo Green's revenue is earned through the production and sale of activated carbon, similar to the operations and sales of the mandatory respondents."  Remand Results at 11 (citation omitted).  Thus, in terms of representativeness, Bravo Green's experience fully represents the experience the mandatory respondents as producers of activated carbon.  In contrast, a very small percentage of Romcarbon's operations (less than two percent) are devoted to activated carbon production (id. at 11 and 21), and JSC's statements do not even contain "information related to the costs and revenues of its activated carbon business." Id. at 21.  The Department explained that were it to

use Romcarbon's statements, the "surrogate financial ratios would be largely unrelated to the production experience of the mandatory respondents and thus introduce distortions in the margin calculations." Id. JSC's statements contain additional calculation flaws related to administrative expenses reported on its profit and loss statement. Id. at 21-22. Thus, "beyond not being from the primary surrogate country," the Department provided an explanation as to why the financial statements of JSC and Romcarbon contain major flaws simply in terms of representativeness of the company's experience vis-à-vis that of the Chinese producers and, for JSC, additional calculation errors.[6] Id.

The Department also responded to Plaintiffs' argument that "Bravo's insufficiently disaggregated expenses yield potentially distorted ratios and Commerce's selection contradicts precedent." Pls' Comments at 12. The Department's analysis correctly focused on a key word used throughout Plaintiffs' claims on page 12 of its comments – i.e., "potentially." See Remand Results at 20-21. Plaintiffs cannot *actually* demonstrate any distortions in Bravo's statements, and so there is no basis to disregard them based on hypothetical concerns. Id. In any case, the Department explained that "any 'potential' distortions that may arise from Bravo Green's financial statements do not detract from the greater distortions that would arise from using JSC

---

[6] That the Department must weigh the relative merits of each financial statement on a particular record undermines Plaintiffs' reliance on past cases with distinguishable facts. For example, in Steel Nails from China, "the surrogate financial statements in question were from the primary surrogate country and were from the only surrogate companies which were producers of nails," whereas here "neither JSC Sorbent or Romcarbon are located in the primary surrogate country nor does the record demonstrate that they are primarily producers of steam activated carbon." Remand Results at 26 (citing Certain Steel Nails from the People's Republic of China: Final Determination of Sales at Less Than Fair Value and Partial Affirmative Determination of Critical Circumstances, 73 Fed. Reg. 33,977 (Dep't Commerce June 16, 2008), and accompanying IDM, at Comment 11). The facts here are sufficiently distinct such that Steel Nails from China is not persuasive.

9

Sorbent's or Romcarbon's financial statements." Id. at 22. This analysis again reflects that the Department has complied with the Court's instructions to weigh the relative shortcomings of the imperfect datasets on the record. See Remand Opinion, 586 F. Supp. 3d at 1379.

Plaintiffs' citations to the Department's findings in prior segments of this proceeding are unavailing. Pls' Comments at 9-10. The facts in the tenth administrative review were unlike those in the underlying review because, as the Department explained, "after reviewing all the potential surrogate financial statements on the record, Commerce selected Romcarbon's 2016 financial statements as they were the only financial statements on the record from a country at the same level of economic development as China and that did not show evidence of countervailable subsidies." Remand Results at 27 (citations omitted). Here, the Department has usable financial statements from a producer of activated carbon in the primary surrogate country and, aside from not being as detailed as normally preferred, those statements otherwise satisfy the agency's surrogate value criteria. See id. The Department's finding in the eleventh administrative review that Romcarbon produces "some activated carbon" is also not inconsistent with its findings in the Remand Results. Pls' Comments at 10. In the Remand Results, the Department did find that Romcarbon is engaged in the production of activated carbon, but it found that activity to be limited to a small percentage of production/sales. See Remand Results at 11. "In contrast, 100 percent of Bravo Green's revenue is earned through the production and sale of activated carbon, similar to the operations and sales of the mandatory respondents." Id. (citations omitted). Accordingly, on that point, the Department found Bravo Green's statements to be superior.

Plaintiffs' challenges regarding the selection of financial statements amount to a reweighing of the record evidence, an exercise that the Court is not to undertake. See Downhole

Pipe & Equip., L.P. v. United States, 776 F.3d 1369, 1376–77 (Fed. Cir. 2015) (citing Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube AB, 975 F.2d 807, 815 (Fed. Cir. 1992)). The Department's analysis is consistent with the Court's remand instructions and fairly weighs the relative merits in concluding that Bravo Green's statements, while not as disaggregated as typically preferred, are sufficiently detailed, mirrors the Chinese respondents' production experience for activated carbon, are from the primary surrogate country, are audited, complete, publicly available, and do not show evidence of countervailable subsidies. See Remand Results at 10, 21. In contrast, while containing a greater level of detail, the financial statements of Romcarbon and JSC reflect an experience that is largely unrelated (or unknown in extent) to that of the Chinese respondents, are not from the primary surrogate country, and, in the case of JSC, contain additional deficiencies that disqualify its use. See id. at 10, 21-22. Accordingly, the Court should affirm the Remand Results with respect to the selection of surrogate financial statements.

### III.  CONCLUSION

For these reasons, we respectfully urge the Court to sustain the Remand Results in their entirety.

Respectfully submitted,

/s/ Melissa M. Brewer
JOHN M. HERRMANN
R. ALAN LUBERDA
MELISSA M. BREWER
JULIA A. KUELZOW

Counsel to Defendant-Intervenors

CERTIFICATE OF COMPLIANCE
WITH COURT OF INTERNATIONAL TRADE
STANDARD CHAMBERS PROCEDURES

Pursuant to the Court of International Trade Standard Chambers procedures, and the U.S. Court of International Trade's ("CIT") decision in <u>Carbon Activated Tianjin Co. v. United States</u>, 586 F. Supp. 3d 1360 (Ct. Int'l Trade 2022) setting the word limitation for comments on Remand to 4,000 words, counsel to Defendant-Intervenors Calgon Carbon Corporation and Cabot Norit Americas, Inc. (collectively, "Defendant-Intervenors"), certifies that these Comments in Support of the U.S. Department of Commerce's <u>Results of Redetermination Pursuant to Court Remand</u>; *Carbon Activated Tianjin Co., Ltd., et al. v. United States*, Consol. Court No. 21-00131 (Dep't Commerce Nov. 17, 2022) (ECF No. 50) (Remand PR 9), contain 3,648 words, including footnotes. The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2013.

        Respectfully submitted,

        <u>/s/ Melissa M. Brewer</u>
        JOHN M. HERRMANN
        R. ALAN LUBERDA
        MELISSA A. BREWER
        JULIA A. KUELZOW
        KELLEY DRYE & WARREN LLP
        3050 K Street, NW, Suite 400
        Washington, DC 20007
        (202) 342-8400

        Counsel to Defendant-Intervenors

Dated:  March 1, 2023