UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____
|                                                                         )
CARBON ACTIVATED TIANJIN CO., LTD.,      )
CARBON ACTIVATED CORPORATION,            )
DATONG JUQIANG ACTIVATED CARBON          )
CO., LTD., SHANXI INDUSTRY TECHNOLOGY)
TRADING CO., LTD., DATONG MUNICIPAL      )
YUNGUANG ACTIVATED CARBON CO., LTD. )
 and BEIJING PACIFIC ACTIVATED CARBON   )
PRODUCTS CO., LTD.,                              )
                                                                          )
                                    Plaintiffs,         )
                                                                          )
            v.                                                        )
                                                                          )          Court No. 21-00131
UNITED STATES,                                         )
                                                                          )
                                    Defendant,        )
                                                                          )
            and                                                     )
                                                                          )
CALGON CARBON CORPORATION              )
and CABOT NORIT AMERICAS, INC.,           )
                                                                          )
                                    Defendant-Intervenors.  )
_____)

## ORDER

Upon consideration of the remand redetermination issued by the Department of

Commerce pursuant to *Carbon Activated Tianjin Co. v. United States*, 586 F. Supp. 3d 1360 (Ct.

Int'l Trade 2022); plaintiffs' comments; and defendant's and defendant-intervenors' replies

thereto, and all other pertinent papers, it is hereby

ORDERED that the remand redetermination is sustained in all respects; and it is further

ORDERED that judgment is entered in favor of the United States.

_____
CHIEF JUDGE

Dated: _____, 2023
        New York, NY

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____
                                                                     )
CARBON ACTIVATED TIANJIN CO., LTD.,         )
CARBON ACTIVATED CORPORATION,                )
DATONG JUQIANG ACTIVATED CARBON            )
CO., LTD., SHANXI INDUSTRY TECHNOLOGY)
TRADING CO., LTD., DATONG MUNICIPAL          )
YUNGUANG ACTIVATED CARBON CO., LTD.  )
 and BEIJING PACIFIC ACTIVATED CARBON       )
PRODUCTS CO., LTD.,                                              )
                                                                     )
                            Plaintiffs,                             )
                                                                     )
            v.                                                            )
                                                                     )          Court No. 21-00131
UNITED STATES,                                                 )
                                                                     )
                            Defendant,                           )
                                                                     )
            and                                                        )
                                                                     )
CALGON CARBON CORPORATION                       )
and CABOT NORIT AMERICAS, INC.,                     )
                                                                     )
                            Defendant-Intervenors.          )
_____)

**DEFENDANT'S REPLY IN SUPPORT OF THE
DEPARTMENT OF COMMERCE'S REMAND REDETERMINATION**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Assistant Director

OF COUNSEL:                              ANTONIA R. SOARES
ASHLANDE GELIN                           Senior Trial Counsel
Attorney                                 Commercial Litigation Branch
Office of the Chief Counsel              Civil Division
   for Trade Enforcement & Compliance   U.S. Department of Justice
U.S. Department of Commerce              P.O. Box 480
                                         Ben Franklin Station
                                         Washington, D.C. 20044

March 1, 2023                            Attorneys for Defendant

# **TABLE OF CONTENTS**

BACKGROUND ................................................................................................... 2

    I.     The Court's Remand Order .................................................................. 2

    II.    Remand Redetermination ..................................................................... 3

ARGUMENT ....................................................................................................... 3

    I.     Standard Of Review ............................................................................ 3

    II.    Substantial Evidence Supports Commerce's Selection Of Coconut-Shell
             Charcoal As The Surrogate Value For Carbonized Materials ................. 3

    III.   Substantial Evidence Supports Commerce's Selection Of The Surrogate
             Value For Financial Ratios .................................................................. 7

CONCLUSION ................................................................................................... 14

**Cases**                                                                                                     **Page(s)**

*Boomerang Tube, LLC, TMK IP-SCO v. United States,*
   856 F.3d 908 (Fed. Cir. 2017) .................................................................................. 8

*Calgon Carbon Corp. v. United States,*
   443 F. Supp. 3d 1334 (Ct. Int'l Trade 2020) ......................................................... 17

*Carbon Activated Tianjin Co. v. United States,*
   586 F. Supp. 3d 1360 (Ct. Int'l Trade 2022) .................................................. *passim*

*Clearon Corp. v. United States,*
   37 C.I.T. 220 (2013) ............................................................................................. 16

*Consol. Edison Co. v. NLRB,*
   305 U.S. 197 (1938) ................................................................................................ 3

*Diamond Sawblades Mfgrs.' Coal. v. United States,*
   219 F. Supp. 3d 1368 (Ct. Int'l Trade 2017) .................................................. 10, 16

*Downhole Pipe & Equipment, L.P. v. United States,*
   776 F.3d 1369 (Fed. Cir. 2015) ............................................................................ 16

*Jacobi Carbons AB v. United States,*
   619 F. Appx. 992 (Fed. Cir. 2015) ..................................................................... 5, 6

*Jiaxing Bro. Fastener Co., Ltd. v. United States,*
   822 F.3d 1289 (Fed. Cir. 2016) .............................................................................. 4

*MacLean-Fogg Co. v. United States,*
   100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ......................................................... 3

*Magnesium Corp. of Am. v. United States,*
   166 F.3d 1364 (Fed. Cir. 1999) .............................................................................. 7

*Qingdao Sea-Line Trading Co. v. United States,*
   766 F.3d 1378 (Fed. Cir. 2014) .............................................................................. 9

*QVD Food Co. v. United States,*
   658 F.3d 1318 (Fed. Cir. 2011) ............................................................................ 17

*SKF USA Inc. v. United States,*
   263 F.3d 1369 (Fed. Cir. 2001) .............................................................................. 9

*SolarWorld Americas, Inc. v. United States*,
   910 F.3d 1216 (Fed. Cir. 2018) ........................................................ 17

*Taian Ziyang Food Co. v. United States*,
   33 C.I.T. 828 (2009) ........................................................................ 12

*Tianjin Wanhua Co., Ltd. v. United States*,
   253 F. Supp. 3d 1318 (Ct. Int'l Trade 2017) ................................ 5, 15

**Statutes**

19 U.S.C. § 1516a(b) .............................................................................. 3

19 U.S.C. § 1677b(c) .............................................................................. 4

28 U.S.C. § 2637(d) ................................................................................ 8

**Administrative Decisions**

*Activated Carbon from China*,                                                        7
   77 Fed. Reg. 67,337 (Dep't of Commerce Nov. 9, 2012) ................... 7

*Activated Carbon from China*,
   78 Fed. Reg. 70,533 (Dep't of Commerce Nov. 20, 2013) ................. 5

*Chlorinated Isocyanurates from China*,
   75 Fed. Reg. 70,212 (Dep't of Commerce Nov. 17, 2010) ............... 13

*Crystalline Silicon Photovoltaic Cells, from China*,
   86 Fed. Reg. 58,871 (Dep't of Commerce Oct. 25, 2021) ............... 14

*Steel Nails from China*,
   73 Fed. Reg. 33,977 (Dep't of Commerce June 16, 2008) ............... 12

*Diamond Sawblades from China*,
   80 Fed. Reg. 32,344 (Dep't of Commerce June 8, 2015) ................. 16

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| CARBON ACTIVATED TIANJIN CO., LTD., CARBON ACTIVATED CORPORATION, DATONG JUQIANG ACTIVATED CARBON CO., LTD., SHANXI INDUSTRY TECHNOLOGY TRADING CO., LTD., DATONG MUNICIPAL YUNGUANG ACTIVATED CARBON CO., LTD. and BEIJING PACIFIC ACTIVATED CARBON PRODUCTS CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> CALGON CARBON CORPORATION and CABOT NORIT AMERICAS, INC., <br><br> Defendant-Intervenors. | Court No. 21-00131 |

## DEFENDANT'S REPLY IN SUPPORT OF THE
## DEPARTMENT OF COMMERCE'S REMAND REDETERMINATION

Defendant, the United States, respectfully submits this reply to the comments filed by

plaintiffs (Pls. Cmts.) (ECF No. 54) concerning the remand redetermination filed by the

Department of Commerce pursuant to this Court's remand order in *Carbon Activated Tianjin Co.*

*v. United States*, 586 F. Supp. 3d 1360 (Ct. Int'l Trade 2022). *See* Final Results of

Redetermination Pursuant to Court Remand (Remand), ECF No. 50 (Remand P.R. 9).[1]  As

---

[1] Citations to P.R. __ and C.R. __ refer to the underlying administrative review record. Citations to "Remand P.R. __" refer to the record of the remand redetermination.

demonstrated below, the Court should sustain the remand redetermination because it is supported by substantial evidence and otherwise in accordance with law.

## BACKGROUND

### I. The Court's Remand Order

On August 8, 2022, the Court issued an opinion sustaining Commerce's determinations with respect to the valuation of five challenged inputs, and remanding Commerce's valuation of carbonized materials and surrogate financial ratios. *Carbon Activated Tianjin Co.*, 586 F. Supp. 3d 1360. Regarding carbonized materials, the Court concluded that Commerce's selection of coconut-shell charcoal (HTS 4402.90.1000) over wood charcoal (HTS 4402.90) was unsupported by substantial evidence because, although finding that plaintiffs' suppliers did not purchase carbonized material that was made from wood or nut charcoal so as to merit the inclusion of HS 4402.90.9000 ("other wood charcoal"), Commerce made no analogous finding as to whether the suppliers purchased carbonized material made from coconut shell charcoal. *Id.* at 1379.

Regarding surrogate financial ratios, the Court concluded that Commerce's selection of the 2018 financial statements of Bravo Green (Bravo), a Malaysian producer of granulated carbon and steam activated carbon, was not supported by substantial evidence because Commerce failed to explain why the less-than-ideal Bravo statements were better than the two non-Malaysian alternatives proposed by respondents — the 2018 financial statements from either Joint Stock Company Sorbent (JSC), a Russian producer of respiratory personal protective equipment, activated carbons, coagulants, and water treatment systems, or S.C. Romcarbon S.A. (Romcarbon), a Romanian producer of filters, polyethylene packaging, charcoal, and other chemical products. *Id.* at 1381.

## II.    Remand Redetermination

Commerce continued to find that import data reported under Malaysian HS 4402.90.1000 ("coconut shell charcoal") was the best available information to value coal-based carbonized material. Remand at 3-8, 14-15. Commerce relied on record evidence demonstrating that the physical properties of activated carbon depend on both the input materials used and the activation process. *Id.* at 6. Because chemically-activated carbon is generally made using wood, and the respondents reported only using steam activation during the period of review, Commerce found that Malaysian HS 4402.90, which includes wood-based activated carbon, is not the best information to value the respondents' carbonized material. *Id.* at 6-7. Following a comparative analysis of the three potential financial statements on the record, Commerce also continued its selection of Malaysian financial statements from Bravo because, among other reasons, the company was the most similar to the respondents' business operations and production experience. *Id.* at 9-12, 18-28.

## ARGUMENT

## I.    Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations "if they are in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

## II.    Substantial Evidence Supports Commerce's Selection Of Coconut-Shell Charcoal As The Surrogate Value For Carbonized Materials

Commerce provided a reasoned explanation for its selection of Malaysian HTS 4402.90.1000 ("coconut shell charcoal") as the best available information on the record to value coal-based carbonized material. Plaintiffs contend that Commerce should have used HTS

4402.90, a basket category comprised of both coconut-shell charcoal and wood charcoal, to value carbonized materials. As demonstrated below, plaintiffs' arguments fail.

First, plaintiffs challenge Commerce's finding that "{t}here is a long, demonstrable history in this proceeding of using coconut-shell {carbonized material} in the production of the subject merchandise, unlike wood {carbonized material}, which has never been used to produce the subject merchandise{,}" contending this assertion "conflates the {surrogate value} data used with the input{.}" Pls. Cmts. at 2-3 (quoting Remand at 5). But the valuation of an input necessarily requires Commerce to select a surrogate value. *See* 19 U.S.C. § 1677b(c)(4). "The data on which Commerce relies to value inputs must be the 'best available information,' but there is no requirement that the data be perfect." *Home Meridian Int'l, Inc. v. United States*, 772 F.3d 1289, 1296 (Fed. Cir. 2014). Here, because there was no evidence that the mandatory respondents used coconut-shell or wood-based carbonized material to produce activated carbon exported to the United States, Commerce looked to other record sources to select the surrogate value for coal-based carbonized material. Remand at 4-5, 6-7. Commerce relied on a report by the International Trade Commission (ITC), which explained that the physical properties of activated carbon depend not only on the raw material inputs used, but also on the activation process. *Id.* at 6 (citing Respondents' Final SV Submission at Exhibit 5A (P.R. 197)). The ITC report explains that chemically activated carbon is generally made using wood. *Id.* Both mandatory respondents reported that they produce only steam activated carbon. *Id.* Because chemically-activated carbon is generally made using wood, and the mandatory respondents reported only using steam activation, Commerce determined that Malaysian HTS 4402.90 — which includes wood-based carbonized material — was not the best information to value the mandatory respondents' carbonized material. *Id.* at 7. Thus, there is no information on the

record requiring Commerce to select wood charcoal as the best available information to value coal-based carbonized material. *See Tianjin Wanhua Co., Ltd. v. United States*, 179 F. Supp. 3d 1062, 1071 (Ct. Int'l Trade 2016) (holding that respondent must establish that the requested values were "the one and only reasonable surrogate selection on {the} administrative record, not simply that {the requested values} may have constituted another possible reasonable choice").

Plaintiffs also contend that precedent and the scope establish that wood charcoal "can" or "may" be used in the production of steam activated carbon. *See* Pls. Cmts. at 3 (quoting *Activated Carbon from China*, 78 Fed. Reg. 70,533 (Dep't of Commerce Nov. 20, 2013), IDM Cmt. 6 & *Jacobi Carbons AB v. United States*, 619 Fed. Appx. 992, 999 (Fed. Cir. 2015)); *id.* at 2, 4-5; *see also id.* at 5 (discussing the scope). But that activated carbon "can" or "may" be manufactured from wood does not change the fact that Commerce has never used wood charcoal to value carbonized material or render Commerce's surrogate value selection unsupported by substantial evidence. Remand at 4-5. Further, the record shows that wood is generally used to produce non-subject chemically-activated carbon. *Id.* at 6. Absent new facts, it is reasonable for Commerce to continue to select coconut-shell charcoal.

Plaintiffs also challenge Commerce's finding that "{t}here is no direct record evidence that coal-based charcoal, coconut-shell charcoal, and wood-based charcoal share similar physical or chemical properties{,}" contending that carbonized material "directly correlates with the performance of the end product." Pls. Cmts. at 3-4. Commerce rejected plaintiffs' end-use arguments because they were unsupported by the record. Remand at 24-26. Further, as discussed above, the ITC report states that the physical properties of activated carbon "depend on the raw materials used, *as well as the activation process*." Remand at 6 (emphasis added). Thus, Commerce further examined the activation process. *Id*. The ITC report explains that coconut-

shell-based activated carbon and wood-based activated carbon differ from coal-based activated carbon because wood-based activated carbon is generally chemically activated. *Id*. As reflected in the scope and as conceded by plaintiffs, chemically activated carbon is considered non-subject merchandise whereas the scope covers only steam activated carbon. *See* IDM at 2 (scope stating that "{e}xcluded from the scope of the order are chemically activated carbons") (P.R. 304); *see also* Pls. Cmts. at 5 (recognizing that the scope covers only steam-activated carbon). Thus, based on the record evidence that chemically activated carbon is generally made using wood, and that the mandatory respondents reported using only steam activation, Commerce reasonably determined that Malaysian HTS 4402.90 — which includes wood-based carbonized material — was not the best available information to value the mandatory respondents' carbonized material. Remand at 7.

Next, plaintiffs assert that Commerce erroneously rejected their price-overlap argument due to the fact that the pricing information placed on the record was from a non-market economy company. Pls. Cmt. at 4 (citing Remand at 15). As Commerce observed, "it is unclear how this information supports the use of a wood-based charcoal {surrogate value} without further evidence or explanation." Remand at 15. Indeed, government intervention in non-market economy countries results in distorted prices. *See, e.g.*, *Magnesium Corp. of Am. v. United States*, 166 F.3d 1364, 1368 (Fed. Cir. 1999) ("{T}he prices of the goods produced in {a non-market economy} are subject to discrepancies which distort their value.").

Finally, plaintiffs contend that Commerce erroneously conflated wood charcoal in HTS 4402.90 with chemically produced wood-based activated carbon, which it contends is inconsistent with Commerce's fourth administrative review findings that "evidence on the use of wood, and not wood charcoal, to produce chemically activated carbon is irrelevant to the use of

wood feedstock {*i.e.*, wood-charcoal} for producing steam activated carbon." Pls. Cmts. at 5

(quoting *Activated Carbon from China*, 77 Fed. Reg. 67,337 (Dep't of Commerce Nov. 9, 2012),

at IDM Cmt. IC(C)). Commerce had no opportunity to address arguments related to the

relevance of "wood feedstock." Pursuant to 28 U.S.C. § 2637(d), parties are required to exhaust

administrative remedies prior to bringing an action in this Court, except in limited circumstances

not relevant here. *Boomerang Tube, LLC, TMK IP-SCO v. United States*, 856 F.3d 908, 912-13

(Fed. Cir. 2017). Because plaintiffs failed to exhaust their administrative remedies, they have

waived arguments related to "wood feedstock."

### III. Substantial Evidence Supports Commerce's Selection Of The Surrogate Value For Financial Ratios

Plaintiffs raise several challenges to Commerce's selection of the Bravo financial

statements to value financial ratios (Pls. Cmts. at 5-14), all of which lack merit.

First, plaintiffs contend that Commerce's selection of the Bravo financial statements was

unlawful based on Commerce's purported "admission" that the financial statements were of

"inferior quality" compared to the JSC and Romcarbon financial statements. Pls. Cmts. at 6.

Commerce made no such admission. Rather, Commerce explained that, although Bravo's

financial statements were not as detailed as Commerce would prefer, its financial statements

contained sufficient information to calculate surrogate financial ratios. Remand at 10 (citing

Petitioners' Final SV Submission at Attach. SV2-4 (P.R. 196)). In selecting Bravo's financial

statements, among other factors, Commerce also relied on evidence that they are from a

manufacturer of identical merchandise, with a similar production experience as the mandatory

respondents, and located in the primary surrogate country. *Id*.

Second, plaintiffs challenge Commerce's selection of the Bravo financial statements

because Commerce "routinely" uses secondary surrogate country financials as reflected in its

selection of Romcarbon in the tenth and eleventh administrative reviews. Pls. Cmts. at 6; *see also id.* at 9-10. Commerce may change its conclusions from one review to the next based on new information and arguments presented before the agency. *See Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014) ("{E}ach administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record."). In the tenth administrative review, Commerce selected Romcarbon's 2016 financial statements because they were the only financial statements on the record from a country at the same level of economic development as China and did not show evidence of countervailable subsidies. Remand at 27. And in the eleventh review, Commerce selected Romcarbon's financial statements because the financial statements from the two Malaysian companies did not contain line-item break downs of the cost for raw materials and energy. *Activated Carbon from China*, 84 Fed. Reg. 68,881 (Dep't of Commerce Dec. 17, 2019), IDM at Cmt.4. Here, however, Commerce found that, although Bravo's financial statements were not as detailed as Commerce preferred, they contained sufficient information to calculate surrogate financial ratios because they provide cost of sales and depreciation expenses related to equipment and machinery to derive an overhead surrogate ratio, SG&A expenses to derive a surrogate SG&A ratio, and a profit to calculate a profit ratio. Remand at 20 (citing Final SV Memorandum at Attach. 1 (P.R. 306-307); Petitioners' SV Submission at Attach. SV2-4 (P.R. 196)). Thus, Commerce provided an adequate explanation "for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (citation omitted).

Third, plaintiffs assert that Commerce failed to comply with the Court's remand order requiring Commerce to undertake a comparative analysis of the data quality of the Bravo

financials against those of JSC and Romcarbon.  Pls. Br. at 6-7; *see also id.* at 9.  Commerce provided a comparative analysis.  Although acknowledging that Bravo's 2018 financial statements are not as detailed as the agency prefers, Commerce found that the financials were preferable to the non-Malaysian alternatives for several reasons, including that they contain sufficient information to calculate surrogate financial ratios, and are from a manufacturer of identical merchandise, with a similar production experience as the mandatory respondents. Remand at 10, 20.

Fourth, plaintiffs contend that Commerce failed to follow precedent requiring the agency to favor data quality over primary surrogate country or comparable production preferences in selecting surrogate financials.  Pls. Br. at 6-7 (citing *Diamond Sawblades Mfgrs.' Coal. v. United States*, 219 F. Supp. 3d 1368, 1383 (Ct. Int'l Trade 2017); *see also id.* at 13-14 (citing *Diamond Sawblades from China*, 80 Fed. Reg. 32,344 (Dep't of Commerce June 8, 2015), IDM Cmt. 5D). In *Diamond Sawblades*, this Court held that Commerce's primary surrogate country preference "on its own is not a sufficient reason to reject superior data."  219 F. Supp. 3d at 1383.  JSC's and Romcarbon's financial statements do not constitute "superior data," and Commerce considered their deficiencies.  JSC's financial statements contained no information related to the production quantity, sales, costs, and revenues of its activated carbon business or any of the products it manufactures.  Remand at 10-11, 21-22, 25.  Indeed, plaintiffs concede that JSC "lacks quantity/value data for activated carbon."  Pls. Cmts. at 8.  Further, the record does not indicate whether JSC or Romcarbon manufactures steam or chemical activated carbon whereas Bravo produces steam activated carbon identical to that of the mandatory respondents.  Remand at 10, 22 n.93, 23 (citing Respondents' Final SV Submission at Exhibit 13D-13H (P.R. 211-213)).  And Romcarbon's costs and revenues are almost entirely unrelated to the production of

activated carbon — such production representing, at a maximum, 1.34 percent of Romcarbon's sales. *Id.* at 11. Accordingly, Commerce reasonably determined that JSC's and Romcarbon's financial statements did not represent the best available information.

Fifth, due to Commerce's rejection of JSC's financials based on its inability to determine what proportion of JSC's production activity was related to activated carbon, plaintiffs claim that Commerce's "explanation replaces longstanding Commerce practice requiring that surrogate companies produce only some proportion of identical/comparable merchandise with a new rigid formula requiring an unspecified production level of the identical merchandise{.}" Pls. Cmts. at 7. But Commerce did not state that identical merchandise or certain production levels are needed to meet the best available information standard. Rather, Commerce found that JSC's financial statements provide no information regarding sales or production quantity of activated carbon or any of the products it manufactures. Remand at 10. Without this information, Commerce was unable to determine whether JSC's production experience was similar to the mandatory respondents' production experience. *Id.* at 11. Commerce's concern with the lack of information related to JSC's production experience was lawful. *See Taian Ziyang Food Co. v. United States*, 637 F. Supp. 2d 1093, 1136 (Ct. Int'l Trade 2009) ("Commerce is tasked with choosing a surrogate representative of respondents' production experience, and is essentially required to create a 'hypothetical' market value to approximate the production experience in the NME country.").

Plaintiffs raise the same "new rigid formula" argument related to Commerce's concerns with Romcarbon's 2018 financial statements. Pls. Cmts. at 7-8. Commerce explained that, "{b}eyond the mandatory respondents' assertion with respect to end use, they provide no information regarding the production process of {Romcarbon's} automotive and industrial filters

or any other similarities with {the subject merchandise —} steam activated carbon." Remand at

24. Further, Romcarbon's 2018 financial statements indicate that its profit center no. 2 —

comprised of a workshop of protective equipment and a workshop of activated carbon —

collectively represented only 1.34 percent of its sales. *Id.* at 11 (citing Respondents' Final SV

Submission at Exhibit 13H (P.R. 213)). Given the two workshops included in profit center no. 2,

Commerce found that it could "reasonably infer that activated carbon specifically represents an

even smaller proportion of Romcarbon's 2018 sales." *Id.* Plaintiffs fail to explain why it was

unreasonable for Commerce not to selection Romcarbon given its limited production of activated

carbon (at most, 1.34 percent of total sales) when 100 percent of Bravo's revenue was earned

through the production and sale of activated carbon, similar to the operations and sales of the

mandatory respondents. *Id.* (citing Petitioners' Final SV Submission at Attach. SV2-4). Thus,

Commerce relied on record evidence demonstrating that Romcarbon's and JSC's production was

not comparable to the mandatory respondents.

Sixth, plaintiffs contend that Commerce's reliance on JSC's and Romcarbon's "relatively

smaller production volumes of identical merchandise" is inconsistent with *Steel Nails from

China*, 73 Fed. Reg. 33,977 (Dep't of Commerce June 16, 2008), and accompanying IDM Cmt.

11. Pls. Cmts. at 8-9. As Commerce explained, *Steel Nails from China* is inapposite because the

surrogate financial statements at issue in that case were from the primary surrogate country and

were from the only surrogate companies which were producers of nails. Remand at 26. Here,

however, neither JSC or Romcarbon are located in the primary surrogate country nor does the

record demonstrate that they are primarily producers of steam activated carbon. *Id.*

Seventh, plaintiffs assert that Commerce's reliance on *Chlorinated Isocyanurates from

China* is misplaced because that case supports selection of JSC's or Romcarbon's financial

statements given that "both produce some activated carbon."  Pls. Cmts. at 9 (citing 75 Fed. Reg. 70,212 (Dep't of Commerce Nov. 17, 2010), IDM at Cmt 3).  Commerce relied on that decision for its practice "of finding the best available information with respect to the valuation of surrogate financial ratios based on similarities between the mandatory respondents' operations and the surrogate financial company's(ies) operations."  Remand at 26-27.  In light of this practice, Commerce found that, unlike the alternatives, "Bravo Green manufactures only activated carbon as do the mandatory respondents{.}"  *Id.*

Eighth, also without merit is plaintiffs' contention that JSC's and Romcarbon's "relatively lesser production experience" compared to Bravo was the sole factor Commerce relied on to "outweigh{ } the overwhelming data superiority of both over Bravo."  Pls. Cmts. at 11.  JSC and Romcarbon do not merely have "relatively lesser production experience."  Rather, in this case, there is no record evidence that either JSC or Romcarbon have a production experience comparable to the mandatory respondents, and Romcarbon's sales of activated carbon were less than 1.34 percent of its 2018 sales — in contrast, 100 percent of Bravo's revenue is earned through the production and sale of activated carbon, similar to the operations and sales of the mandatory respondents.  Remand at 10-11.  Commerce also found that there was no evidence that either JSC or Romcarbon produced steam activated carbon (the subject merchandise) while record evidence established that Bravo produces steam activated carbon identical to respondents.  *Id.* at 22 n.93, 23 (citing Petitioners' Final SV Submission at Attach. SV2-4).  The record also does not support what plaintiffs characterize as the "overwhelming data superiority" of JSC's and Romcarbon's financial statements.  Although Bravo did not disaggregate its financial information as much as Commerce prefers, Commerce found that they were sufficiently detailed to calculate the surrogate financial ratios.  *Id.* at 10.  Commerce previously has rejected the use

of a more detailed financial statement and instead used the statements from a company producing merchandise identical to the subject merchandise. *See* Remand at 23 n.96 (citing *Crystalline Silicon Photovoltaic Cells from China*, 86 Fed. Reg. 58,871 (Dep't of Commerce Oct. 25, 2021), and accompanying IDM at Cmt. 14). Further, Commerce found deficiencies in JSC's and Romcarbon's financial statements. Remand at 21-22.

Nineth, plaintiffs contend that Commerce fails to rebut that JSC's other products — respiratory personal protective equipment, coagulants and water treatment systems — have similar end-uses of removing particulate and gaseous matter as activated carbon. Pls. Br. at 7-8. Commerce rejected plaintiffs' end-use arguments because they were unsupported by the record. Remand at 24-25. Further, plaintiffs provided no information as to whether the production process of its other products are similar to the production process of steam activated carbon. *Id.* at 23-24 (citing Respondents' Final SV Submission at Exhibit 13E and 13F (P.R. 213)). Plaintiffs make a similar end-use argument related to Romcarbon's auto and industrial filters (*see* Pls. Cmts. at 8), but Commerce rejected that argument because it is unsupported by the record. Remand at 24-25.

Tenth, plaintiffs contend that Commerce's selection of Bravo's financial statements resulted in distorted financial ratios because Bravo's cost of sales "potentially" includes a portion of non-depreciation manufacturing overheads, and Bravo's operating expenses "potentially" include such excludable expenses. Pls. Cmts. at 12-13. These arguments are based on nothing more than speculation and, thus, Commerce lawfully rejected these arguments. Remand at 20-21; *see also, e.g.*, *Downhole Pipe & Equipment, L.P. v. United States*, 776 F.3d 1369, 1380 (Fed. Cir. 2015) (rejecting appellants' speculative argument because they "fail to provide any evidence in support of this proposition"). Further, "deriving the surrogate data from one surrogate country

limits the amount of distortion introduced into its calculations because a domestic producer would be more likely to purchase a product available" in its home country. *Clearon Corp. v. United States*, 37 C.I.T. 220, 229 (2013); *see also* Remand at 19.

Finally, plaintiffs erroneously contend that Commerce's reliance on the lack of relevant evidence to support plaintiffs' potential-distortion argument constitutes "an impermissible reversal of the burden of proof." Pls. Cmts. at 12. But "the burden of creating an adequate record lies with {interested parties} and not with Commerce." *Calgon Carbon Corp. v. United States*, 443 F. Supp. 3d 1334, 1345 (Ct. Int'l Trade 2020) (citing *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011)).

Faced with imperfect alternatives, Commerce acted within its statutory discretion in selecting among these alternatives and provided a reasoned explanation for its selection. Plaintiffs impermissibly ask this Court to "reweigh the evidence already considered by Commerce." *SolarWorld Americas, Inc. v. United States*, 910 F.3d 1216, 1225 (Fed. Cir. 2018).

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's remand results and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General


PATRICIA M. McCARTHY
Director


<u>/s/ Claudia Burke</u>
CLAUDIA BURKE
Assistant Director

OF COUNSEL:

Ashlande Gelin
Attorney
Office of the Chief Counsel
    for Trade Enforcement & Compliance
U.S. Department of Commerce


March 1, 2023

/s/ Antonia R. Soares
ANTONIA R. SOARES
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7405
Email: antonia.soares@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains 3,806 words, excluding the parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

/s/ Antonia R. Soares
ANTONIA R. SOARES

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on this 1st day of March 2023, a copy of the

foregoing "DEFENDANT'S REPLY IN SUPPORT OF THE DEPARTMENT OF

COMMERCE'S REMAND REDETERMINATION" was filed electronically.  I understand that

notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


/s/ Antonia R. Soares
ANTONIA R. SOARES